**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| THUY-AI NGUYEN ) | |
| 3006 Thompson Farm Court ) | |
| Fairfax, VA 22031 ) | |
| ) | Case No. 18-cv-0492 |
| *Plaintiff* ) | |
| ) | **JURY TRIAL REQUESTED** |
| v. ) | |
| ) | |
| STEVEN MNUCHIN ) | |
| Secretary of the Treasury ) | |
| 1500 Pennsylvania Ave., N.W. ) | |
| Washington, D.C. 20220 ) | |
| ) | |
| *Defendant*. ) | |

## AMENDED COMPLAINT

Comes now, Plaintiff Thuy-Ai Nguyen, by and through undersigned counsel, brings this action against Defendant Steven Mnuchin, Secretary of the Treasury (the "Agency"), to redress discrimination, hostile work environment, failure to accommodate, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act of 1967 ("ADEA"), *as amended*, 29 U.S.C. § 621 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), *as amended*, 29 U.S.C. 2601 *et seq*, and the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. § 701 *et seq.*

### JURISDICTION AND VENUE

1.      Events at issue occurred at the Internal Revenue Service ("IRS") office located at 5000 Ellin Road, Lanham, Maryland 20706, located in Prince George's County.

2.      This Court has federal question jurisdiction with regard to Plaintiff's Title VII, FMLA, and ADEA claims pursuant to pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

3.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because the majority of events that underlie this action took place in the District of Maryland. This action is properly brought in the Southern Division because the majority of events that underlie this action took place in Prince George's County, Maryland.

4.      Plaintiff timely filed a charge of discrimination based on race, national origin, sex, age, retaliation, and others with the United States Equal Employment Opportunity Commission ("EEOC").

5.      This lawsuit is brought within ninety (90) days of Plaintiff's receipt of the Agency's final decision and receipt of notice of right to file suit.

## PARTIES

6.      Plaintiff Thuy-Ai Nguyen is an individual residing at 3006 Thompson Farm Court, Fairfax, VA 22031. Plaintiff was at all times relevant hereto an employee of the Agency within the meaning of Title VII and the ADEA. Plaintiff is female (sex), Vietnamese (national origin), Asian (race), and over the age of forty (age) during all times relevant to these allegations.

7.      Defendant Steven Mnuchin is the Secretary of the U.S. Department of the Treasury (hereafter the "Agency").

## FACTUAL BACKGROUND

8.      Plaintiff Thuy-Ai Nguyen is a Vietnamese, Asian woman, born on January 13, 1965 in Vietnam.

9.      During the times relevant to this Complaint, Mrs. Nguyen worked as an IT Specialist in the TEGE Systems Office (a unit within the IRS) at the New Carrollton Federal Building located at 5000 Ellin Road, Lanham, Maryland 20706.

10.     Mrs. Nguyen's supervisors, specifically her first level supervisor Section Chief Linda Whiting, her second level supervisor Branch Chief Norman Keith, and third level supervisor Director Linda Gilpin, and on co-worker, Cindy McGregor, discriminated against Mrs. Nguyen by, *inter alia*, setting her up to fail by assigning her to the TRAC project without training or a transition plan, marginalizing her, forcing her to work with unreasonable expectations, harassing her, and suspending her for asking questions and requesting necessary training.

11.     Linda Whiting, Norman Keith, and Linda Gilpin had the authority to assign Mrs. Nguyen to work tasks or projects and to formally rate Mrs. Nguyen on performance reviews and other forms of employee evaluation.

12.     From the beginning of her employment until May 2013, Mrs. Nguyen had no problems with her superiors or any co-workers, and she received consistently excellent annual reviews.

13.     Mrs. Nguyen was initially hired in April 2001 as a Quality Assurance Analyst in the Modernized Product Assurance Office (a unit within the IRS) at the New Carrolton Federal Building in Lanham, Maryland.

14.     From June 2006 until May 2013, Mrs. Nguyen worked as an IT Specialist in the TEGE Systems Office, Submission Processing Division and Application Development Domain (a unit within the IRS).

15.     Specifically, as an IT Specialist, Mrs. Nguyen was hired as a programming specialist in the Informix programming language.

16.     This role is distinct from other IT specialists, who are hired as programming specialist for other programming languages, such as Oracle Forms and Reports, HTML, or Java.

17.     Mrs. Nguyen was not hired as a software specialist, technical writer, database specialist, networking specialist, or web specialist.

18.     From June 2006 until May 2013, Mrs. Nguyen's primary responsibility was on the EDS program, which she worked on full-time starting in June 2006.

19.     From the time she first began working for the Agency until 2013, almost fifteen years, Mrs. Nguyen received consistently excellent performance reviews.

20.     In fact, prior to 2013, Mrs. Nguyen never received an unfavorable evaluation from anyone in the Agency.

21.     In approximately 2008 or 2009 the TRAC system was converted from Informix to Oracle Forms and Reports. From its very beginning, the TRAC project was behind schedule and failed to properly function for users.

22.     These problems included structural problems that required rebuilding and redesigning the system and copious open problem tickets, which meant that an expert knowledge of Oracle Forms and Reports was required to fix and redevelop the many structural problems with the TRAC system.

23.     In addition, working on the TRAC project required working on Section 508 Accessibility, which means that the individual working on TRAC also required particular expertise for Section 508 Accessibility issues.

24.     Informix systems differ significantly from Oracle Forms and Reports systems, including, but not limited to, greatly different programming language, platform, and operating systems.

25.     Prior to May 2013, several employees in Mrs. Nguyen's office, including herself, were asked to help with the TRAC project , which had suffered from a litany of problems for years, in addition to their regular, full-time assignments.

26.     Cindy McGregor had been the primary employee assigned to TRAC for over twenty years, but she was unable or unwilling to rectify all of the TRAC project's many design and user problems.

27.     Any work that Mrs. Nguyen did on TRAC during this time before May 2013 was completed when she had enough time in addition to her continued, full-time assignment to EDS.

28.     Mrs. Nguyen's work on TRAC at this time included time in which she logged in to provide assistance on her off day.

29.     Other co-workers similarly performed some work on TRAC in addition to their regularly assigned tasks.

30.     It was generally understood that the TRAC project was in crisis situation, far behind schedule, and experiencing many problems.

31.     It was also generally understood that employees were encouraged to help with TRAC problems in addition to their specific full-time responsibilities.

32.     Mrs. Nguyen tried to help as much as possible because she cared about helping her co-workers with the problems plaguing the TRAC project.

33.     Although she did perform some work on TRAC in addition to her work on the EDS project, Mrs. Nguyen did not spend enough of her time on TRAC to become an expert on the TRAC project.

34.     In May of 2013, Linda Whiting (African-American, female) became Mrs. Nguyen's first-line supervisor.

35.     On May 2, 2013, Linda Whiting reassigned Mrs. Nguyen from her full-time work on the EDS project to full-time work on the TRAC project.

36.     The only other full-time employee assigned to track was Cindy McGregor, who had been the project lead on the TRAC project for several years.

37.     Several of Mrs. Nguyen's co-workers were better suited for the TRAC project because they had more related experience or more compatible prior training and knowledge.

38.     A full-time assignment to the TRAC project required particular skills, experiences, and knowledge that Mrs. Nguyen did not possess.

39.     A full-time assignment to the TRAC project required knowledge of Oracle Forms, Oracle Reports, Java, HTML, WebLogic, and Section 508 Accessibility tools (including, but not limited to, JAWS, Dragon, Naturally Speaking, and Zoom Text).

40.     Mrs. Nguyen had only ever received an introductory training class on Oracle Forms. This introductory training class was not sufficient for her to operate or work on the TRAC related tasks that required use of Oracle Forms.

41.     Mrs. Nguyen did not have training or experience with any other programs integral to the TRAC system, such as Oracle Reports, Java, HTML, WebLogic, and Section 508 Accessibility tools (including, but not limited to, JAWS, Dragon, Naturally Speaking, and Zoom Text).

42.     The TRAC project was far beyond Mrs. Nguyen's experience, knowledge, and capabilities.

43.     The Agency and management, including Linda Whiting, knew that Mrs. Nguyen did not have the experience, knowledge, training, and capabilities to successfully work on the TRAC project full-time.

44.     When she was transferred to the TRAC project, neither the Agency nor anyone in management provided Mrs. Nguyen with any transition training, knowledge transfer, or any other opportunity for Mrs. Nguyen to learn or develop skills needed to work full-time on the TRAC system.

45.     Other non-Vietnamese, non-Asian, male, and/or younger employees in the office were better choices to transfer to the TRAC project, if someone needed to be transferred.

46.     Other non-Vietnamese, non-Asian, male, and/or younger employees had more applicable knowledge and/or experience that made them better choices to work on the TRAC project.

47.     Instead of hiring a new employee with applicable skills or knowledge needed to work on the TRAC project, Linda Whiting and Agency management reassigned Mrs. Nguyen to the failing TRAC project and blamed her for any failures.

48.     After reassigning Mrs. Nguyen to TRAC, the Agency hired two new, younger employees (under the age of forty) to take her place on the EDS project.

49.     These younger individuals lacked the skills or experience that matched with the EDS project.

50.     Neither of these new employees were Vietnamese, Asian, or over the age of forty.

51.     In addition to the assignment to the TRAC project, Mrs. Nguyen was required to assist the RS-PCC project with testing. This project did not belong to her section, the TEGE section, but Ms. Nguyen was nevertheless forced to provide twenty hours per week of her time to this assignment. The Agency was aware at the time that, like the TRAC project, Ms. Nguyen did not have the necessary knowledge, skills, or experience to understand the RS-PCC project.

52.     After transferring Mrs. Nguyen to the TRAC project, the Agency and management, especially Linda Whiting, began routinely blaming Mrs. Nguyen for all of the TRAC problems and failures.

53.     The Agency and management, especially Linda Whiting, did not hold Cindy McGregor (Caucasian, female) accountable for the TRAC problems and failures, but instead blamed Mrs. Nguyen for the TRAC problems and failures.

54.     Many times Cindy McGregor admitted to Linda Whiting that she did not know how to complete a required task, but Linda Whiting never disciplined or criticized Cindy McGregor.

55.     The Agency, through Linda Whiting's actions as supervisor, took an adverse employment action against Mrs. Nguyen by reassigning her to the TRAC project in order to set her up to fail.

56.     In addition, after transferring Mrs. Nguyen to the TRAC project, Linda treated Mrs. Nguyen differently and more unfavorably than other co-workers who were not Asian, Vietnamese, female, or over the age of forty. Linda Whiting also began subjecting Mrs. Nguyen to a hostile work environment.

57.     Despite not being able to fully handle the TRAC project, Mrs. Nguyen nevertheless accepted the assignment and endeavored to do her best.

58.     The Agency expected Mrs. Nguyen to teach herself the programming languages required for the TRAC project, but at the same time continually updated the software, negating any knowledge Mrs. Nguyen had taught herself.

59.     In order to complete the best job that she could, Mrs. Nguyen often asked for training, instruction, and help with TRAC related assignments from other employees who knew more about TRAC related components.

60.     Mrs. Nguyen made several requests for training courses, on the job training, instruction documents/manuals, and other types of aid, but Linda Whiting refused to provide the requested help and obstructed Mrs. Nguyen's attempts to learn skills needed for the TRAC project.

61.     Mrs. Nguyen's requests for assistance included requests for help or training on Intermediate and Advanced Oracle Forms, Introduction to Intermediate and Advanced Oracle Reports, and 508 Accessibility Software, such as JAWS, Dragon, Natural Speaking and Zoom Text, all of which are used for the TRAC project.

62.     During the same times that Mrs. Nguyen requested training for the TRAC project, Linda Whiting procured training for herself for her position.

63.     Mrs. Nguyen was not provided a transition plan when she was assigned to the TRAC project. A transition plan is normally provided to an employee assigned to a new project.

64.     For instance, on one occasion Mrs. Nguyen was required to work on the 508 Questionnaire, which required the use of the Design Specification Report ("DSR"). Neither Linda Whiting nor Cindy McGregor would provide Mrs. Nguyen with the DSR, even though they both had access to it and knew that it was needed for the 508 Questionnaire assignment.[1]

65.     On at least one occasion, Linda Whiting instructed Cindy McGregor to ignore Mrs. Nguyen's requests for transition information that would help Mrs. Nguyen with her TRAC assignments.

66.     Whenever Mrs. Nguyen proposed a solution to a problem for the TRAC project, her solution was rejected without explanation or consideration.

67.     Despite Mrs. Nguyen's best efforts, the Agency blamed her for problems with the TRAC project, many of which pre-existed her assignment to the project, and accused her of not

---

[1] The DSR is not specifically needed for only the 508 Questionnaire. The DSR is essential and necessary for any work done on the TRAC project.

completing her work, even though she was given unreasonable deadlines and performance expectations.

68.      As soon as Linda Whiting became Mrs. Nguyen's direct supervisor in May 2013, she created a hostile work environment which included yelling at Mrs. Nguyen in the office, making negative comments about Mrs. Nguyen, and threatening Mrs. Nguyen's workplace evaluations.

69.      The performance evaluation affects Mrs. Nguyen's opportunity for a future raise, promotion, or elevation of her GS level.

70.      This harassment occurred constantly, as Linda Whiting treated Mrs. Nguyen with hostility and treated her differently than her non-Vietnamese, non-Asian, male, and/or younger co-workers during almost any interaction between Linda Whiting and Mrs. Nguyen.

71.      Linda Whiting consistently harassed, bullied and threatened Mrs. Nguyen. It happened not only in every meeting with her, but also in every event that she interacted with Linda Whiting.

72.      For instance, on one occasion Linda Whiting berated Mrs. Nguyen in front of other co-workers by yelling at her after Mrs. Nguyen tried to explain her work on TRAC.

73.      This episode of verbal abuse embarrassed, humiliated, and frightened Mrs. Nguyen.

74.      Other co-workers in the office witnessed this episode of verbal abuse.

75.      Throughout the time that she acted as Mrs. Nguyen's direct supervisor, Linda Whiting often became angry when Mrs. Nguyen would ask questions about her work assignments.

76.      When Linda Whiting would become angry, which occurred often, she would disparage Mrs. Nguyen and refuse to let her speak.

77.     Linda Whiting treated Mrs. Nguyen with contempt and would not allow her to speak in meetings or to ask legitimate questions about her work assignments.

78.     Linda Whiting also unnecessarily disparaged Mrs. Nguyen's English on multiple occasions.

79.     Cindy McGregor also criticized Mrs. Nguyen's English skills, talked to her as if she were stupid and incompetent, and purposefully 'dumbed down' her language when communicating with Mrs. Nguyen, which embarrassed, humiliated, and disrespected Mrs. Nguyen.

80.     Linda Whiting tolerated the way Cindy McGregor treated Mrs. Nguyen and never reprimanded or disciplined McGregor for it.

81.     Linda Whiting also chastised Mrs. Nguyen on many occasions for taking actions within Mrs. Nguyen's discretion, such as whether or not to complete optional self-assessments.

82.     Linda Whiting's disrespect included not only speaking harshly towards Mrs. Nguyen, but also included threats that she would lower Mrs. Nguyen's performance reviews.

83.     Linda Whiting intimidated Mrs. Nguyen by threatening to lower her performance reviews and have her disciplined for asking for help or requesting training.

84.     Linda Whiting regularly treated Mrs. Nguyen as inferior to other, non-Vietnamese employees, non-Asian employees, younger employees, and male employees.

85.     For instance, Linda Whiting regularly ignored work done by Mrs. Nguyen, but patiently listened and acknowledged work done by Cindy McGregor on the TRAC project.

86.     Sometimes this included giving Cindy McGregor credit for work done by Mrs. Nguyen and then accusing Mrs. Nguyen of not completing the required assignments.

87.     Linda Whiting also treated Mrs. Nguyen differently from other male co-workers. For instance, on one occasion Mrs. Nguyen worked on a RS-PCC testing with another employee, William Chester, an African-American male. Linda Whiting praised only Mr. Chester for the work both he and Mrs. Nguyen did on the assignment, but refused to acknowledge Mrs. Nguyen's contributions.

88.     Linda Whiting also treated Mrs. Nguyen differently from other non-Vietnamese, non-Asian, male, and/or younger employees by regularly criticizing her, but regularly accepting poor work from other employees.

89.     For instance, Linda Whiting regularly blamed Mrs. Nguyen for TRAC failures.

90.     On the other hand, Linda Whiting acknowledged and approved of Cindy McGregor's work on TRAC, even though Cindy McGregor was in charge of the TRAC project, unlike Mrs. Nguyen, and was in charge of TRAC when it was a failing project before Mrs. Nguyen's reassignment.

91.     As another example of disparate treatment, Linda Whiting once accused Mrs. Nguyen of missing a class on 508 Accessibility, even after Mrs. Nguyen provided proof of her attendance. Linda Whiting, however, believed another employee, Steven Smith, a Caucasian male, when he said he attended and did not require him to show proof.

92.     Linda Whiting also routinely criticized Mrs. Nguyen's work before reviewing it. Linda Whiting did not criticize the work of other employees without first reviewing it.

93.     On another occasion, Linda Whiting commented on Mrs. Nguyen's English by criticizing her use of the word "share" in an email.

94.     As another example of disparate treatment, in May 2014, Linda Whiting refused to provide Mrs. Nguyen with performance expectations and then refused to meet Mrs. Nguyen in person to discuss her performance expectations.

95.     Linda Whiting regularly forbid Mrs. Nguyen from speaking during group meetings, and if Mrs. Nguyen ever did try to speak, Linda Whiting would accuse her of disruptions.

96.     As soon as Linda Whiting took over as Mrs. Nguyen's first line supervisor she and management began holding Mrs. Nguyen to unfair and unrealistic work expectations.

97.     Other non-Vietnamese, non-Asian, male, and/or younger employees were not held to similarly difficult timelines or expected to complete projects without any help or training.

98.     On another occasion, Linda Whiting purposefully disregarded the orders of Mrs. Nguyen's therapist, who had explained to Linda Whiting that Mrs. Nguyen needed to be on a part-time schedule for a period of time. In response, Linda Whiting denied communicating with Mrs. Nguyen's therapist and threatened and demanded that Mrs. Nguyen return to a full-time schedule immediately.

99.     When Mrs. Nguyen returned to full-time work after a period of time off, Linda Whiting and Norman Keith demanded that she perform tasks she was not trained to perform, increased her workload, and set unreasonable deadlines for new tasks.

100.    Linda Whiting's harassment included threatening Mrs. Nguyen and intimidating Mrs. Nguyen into changing comments made on performance reviews and evaluations.

101.    The hostile work environment was not the creation of Linda Whiting alone. Mrs. Nguyen's second-level supervisor, Norman Keith, also discriminated against Mrs. Nguyen and contributed to the hostile work environment.

102.     Mrs. Nguyen sent several requests for assistance with the situation between her and Linda Whiting to Norman Keith (African-American, male), but Mr. Keith ignored all of Mrs. Nguyen's requests for help dealing with her unfair workload and unfair treatment by Linda Whiting.

103.     Norman Keith continually denied or ignored Mrs. Nguyen's requests for assistance with the way Linda Whiting treated her, Mrs. Nguyen's requests to schedule a meeting to discuss Linda Whiting's behavior, and refused to take any action to alleviate the hostile environment, even after Mrs. Nguyen informed Norman Keith that the work environment was making her ill, both mentally and physically.

104.     In addition, when he finally made the decision to meet with Mrs. Nguyen, Norman Keith forced Mrs. Nguyen to attend the meeting without any notice or ability to prepare.

105.     At this meeting, on July 2, 2014, Norman Keith berated Mrs. Nguyen and physically threatened her by pounding on his desk.

106.     In addition to the near constant harassment and discrimination, Mrs. Nguyen's supervisors took other adverse employment actions against Mrs. Nguyen including negative evaluation scores and hostile personnel actions.

107.     On more than one occasion, male, non-Asian employees in the TEGE office talked back (refused to directly follow instructions without questioning the instruction) to Linda Whiting, but none of these individuals were disciplined.

108.     For instance, Linda Whiting took an adverse employment action against Mrs. Nguyen when on November 5, 2014, Linda Whiting gave Mrs. Nguyen failing marks in every category on her mid-year performance review.

109.    Linda Whiting also required Mrs. Nguyen to undergo monthly performance evaluations.

110.    Beforehand, no other employee was required to undergo monthly performance evaluations.

111.    Linda Whiting had wanted to give Mrs. Nguyen failing marks on since her previous review.

112.    At the previous review, Linda Whiting remarked that she was not allowed to give anything less than top reviews, even though she wanted to give Mrs. Nguyen failing marks.

113.    In addition, Norman Keith and Linda Whiting took an adverse employment action against Mrs. Nguyen by suspending her without pay for one day.

114.    Mrs. Nguyen had engaged in protected EEO activity in an effort to rectify the harassment and discrimination that she faced.

115.    On August 25, 2014, as part of the informal EEO process, Mrs. Nguyen and representatives for the Agency participated in a voluntary mediation session.

116.    The following day, Norman Keith notified Mrs. Nguyen that the Agency was proposing suspending her without pay for one day.

117.    On November 7, 2014, the Agency informed Mrs. Nguyen that she had been suspended without pay for one day. The Agency issued this suspension while Mrs. Nguyen was taking extended sick leave to receive treatment for her depression.

118.    Linda Gilpin, who ultimately issued the suspension after it was requested by Norman Keith, never allowed Mrs. Nguyen to explain her version of events. Mrs. Nguyen requested time to discuss the situation with Linda Gilpin, but Ms. Gilpin refused to listen to Mrs. Nguyen.

119.    Mrs. Nguyen served her one-day suspension, but even then could not escape from Linda Whiting's abuse.

120.    On the day she served her suspension, Linda Whiting contacted Mrs. Nguyen and demanded that she log into her business account and check her email.

121.    As a result of the near constant hostility and discrimination she encountered, Mrs. Nguyen developed severe depression, severe anxiety, and mental anguish that substantially limited her ability to complete normal work functions or job assignments.

122.    The severe depression, anxiety, and mental anguish, in addition to inhibiting Mrs. Nguyen's ability to complete normal job functions, has, among other things, impeded her ability to focus on tasks, concentrate, and drive on busy streets.

123.    The severe depression, anxiety, and mental anguish has also caused Mrs. Nguyen frequent headaches, hair loss, muscle cramps, back pain, jaw pain, neck pain, ear pain, and stomachaches.

124.    Mrs. Nguyen now suffers from frequent nightmares that affect her ability to sleep, panic attacks, and constant fear that she will be forced to submit to more harassment.

125.    Because of the severe depression, anxiety, and mental anguish and the fear of future reprisal, Mrs. Nguyen is physically and mentally unable to work.

126.    These severe conditions have also greatly affected Ms. Nguyen's ability to function at home, including harming her ability to care for her family in the ways she wants and was accustomed.

127.    At first, Mrs. Nguyen used all available accrued annual and sick leave to deal with her condition.

128.     Ultimately, as a consequence of the Agency's actions, Mrs. Nguyen has been forced to take indefinite leave without pay since July of 2014.

129.     Prior to taking indefinite leave without pay, Mrs. Nguyen requested leave under the Family and Medical Leave Act ("FMLA") for the period of July 21, 2014 to August 3, 2014.

130.     On September 30, 2014, Linda Whiting formally denied Ms. Nguyen's request for FMLA leave.

131.     In December 2014, Ms. Nguyen learned that her ERAP account and other associated accounts had been deleted.

132.     Management then denied Ms. Nguyen's subsequent requests to access to her work computer to retrieve supporting documents in pursuit of her claims before the EEOC.

133.     On January 26, 2015, Ms. Nguyen requested eight hours of administrative time for research she conducted while on leave to respond to the Agency's assertion that she owed them for an overpayment of salary – management never approved or responded to her request.

134.     Plaintiff informed Norman Keith about her severe depression and anxiety that had been caused by the hostile work environment created by Linda Whiting in June 2014. Mr. Keith refused all of Mrs. Nguyen's requests for a meeting to discuss her condition and the condition of her work environment.

135.     Starting in July 2014, Mrs. Nguyen required three months of sick leave for treatment for her depression and anxiety. The Agency was aware of Mrs. Nguyen's condition and the reason for her leave.

136.     On September 22, 2014, one of Mrs. Nguyen's psychiatrists contacted and advised Linda Whiting about Mrs. Nguyen's condition.

137.     By letter dated October 2, 2014, one of Mrs. Nguyen's medical providers wrote to the Agency that Mrs. Nguyen needed to be transferred to a different department because of her health. This letter was provided to Mrs. Nguyen's managers, but the Agency never looked into any transfer. This was not the only medical recommendation provided to Defendant that requested that Plaintiff receive a transfer (among other accommodations).

138.     Mrs. Nguyen submitted her first request for reasonable accommodation on June 19, 2015.

139.     Her request included transfer to a new office, transfer to a different project, transfer to new supervisors, training, part-time schedule, and flexi-place. These accommodations were recommended by Plaintiff's medical care team, and with these accommodations Plaintiff could successfully perform her position, as she had done for several years before Linda Whiting became her direct supervisor.

140.     As a part of her formal request for reasonable accommodation, Mrs. Nguyen supplied medical documentation which detailed her condition and the necessary accommodations, which included transfer to a new project in a different division under the supervision of different managers.

141.     Multiple doctors, as well as a report by the Department of Health and Human Services, recommended that Plaintiff be transferred in order to accommodate her condition.

142.     During the time period in which the Agency was supposed to be conducting a search for reasonable accommodations, Mrs. Nguyen alerted the Agency of multiple, publicly-posted, available positions in the Washington, DC metropolitan area that would have satisfied her accommodation criteria.

143.     By information and belief, as of January of 2015, Linda Whiting had been transitioned to a different office/department, but she continued to attempt to exert control over Mrs. Nguyen and demand Mrs. Nguyen supply her with work-related documents. Linda Whiting's continued demands were known to and permitted by the Agency.

**COUNT I**
**Title VII – Discrimination on Basis of Race, National Origin, and Sex**

144.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

145.     Plaintiff performed her job duties at or above expected levels.

146.     Plaintiff was not treated the same for all employment-related purposes as other similarly-situated individuals with similar responsibilities and ability to work who did not share Mrs. Nguyen's race, national origin, and/or sex.

147.     Defendant took several adverse employment actions against Mrs. Nguyen, including, but not limited to, assigning her to the TRAC project in order to set her up to fail, giving her negative performance evaluations, and suspending her without pay.

148.     These adverse employment actions would not have happened but for Mrs. Nguyen's race, national origin, and/or sex.

149.     Mrs. Nguyen would not have been reassigned to the TRAC project but for her race, national origin, and/or sex.

150.     Mrs. Nguyen would not have received negative performance evaluations or negative reviews but for her race, national origin, and/or sex.

151.     Mrs. Nguyen would not have been suspended but for her race, national origin, and/or sex.

152.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

153.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has also suffered and will continue to suffer among other things: humiliation, embarrassment, emotional distress, and mental anguish.

## COUNT II
## Title VII – Hostile Work Environment

154.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

155.     Linda Whiting and Norman Keith were empowered by the Agency to take tangible employment actions against Plaintiff.

156.     Linda Whiting and other Agency employees did not harass, intimidate, embarrass or demean other employees who did not share Mrs. Nguyen's race, national origin, and sex.

157.     Linda Whiting and other Agency employees harassed, intimidated, embarrassed, and demeaned Mrs. Nguyen because of her race, national origin, and sex.

158.     The harassment was severe and pervasive and created a hostile work environment.

159.     The harassment occurred frequently after Linda Whiting became Mrs. Nguyen's first-line supervisor.

160.     The harassment unreasonably interfered with Mrs. Nguyen's work performance because, among other reasons, it caused her to develop severe anxiety and depression and she was constantly fearful of reprisal.

161.     The harassment altered the terms and conditions of Mrs. Nguyen's employment by disabling her mental and physical ability to perform work activities and other major life activities.

162.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

163.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has also suffered and will continue to suffer among other things: humiliation, embarrassment, emotional distress, and mental anguish.

**COUNT III**
**<u>Title VII – Retaliation</u>**

164.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

165.     Mrs. Nguyen engaged in protected activity when she contacted an EEO counselor about her allegations of harassment and discrimination.

166.     The Agency took an adverse employment action against Mrs. Nguyen by suspending her.

167.     The Agency also interfered with Ms. Nguyen's attempts to pursue protected activity.

168.     Mrs. Nguyen was suspended because she engaged in protected activity.

169.     Mrs. Nguyen would not have been suspended if she had not engaged in protected activity.

170.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

## COUNT IV
## ADEA – Discrimination on Basis of Age

171.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

172.     Plaintiff performed her job duties at or above expected levels.

173.     Plaintiff was not treated the same for all employment-related purposes as other similarly-situated younger individuals with similar responsibilities and ability to work.

174.     Defendant took several adverse employment actions against Mrs. Nguyen, including, but not limited to, assigning her to the TRAC project in order to set her up to fail, giving her negative performance evaluations, and suspending her without pay.

175.     These adverse employment actions would not have happened but for Mrs. Nguyen's age.

176.     Mrs. Nguyen would not have been reassigned to the TRAC project but for her age.

177.     Mrs. Nguyen would not have received negative performance evaluations or negative reviews but for her age.

178.     Mrs. Nguyen would not have been suspended but for her age.

179.     The Agency and some of its employees, including, but not limited to, Linda Whiting willfully and intentionally discriminated against Mrs. Nguyen because of her age.

180.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

181.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has also suffered and will continue to suffer among other things: humiliation, embarrassment, emotional distress, and mental anguish.

## COUNT V
### ADEA – Hostile Work Environment

182.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

183.     Linda Whiting and other Agency employees harassed, intimidated, embarrassed, and demeaned Mrs. Nguyen because of her age.

184.     Linda Whiting and Norman Keith were empowered by the Agency to take tangible employment actions against Plaintiff.

185.     Linda Whiting and other Agency employees did not harass, intimidate, embarrass or demean other younger employees.

186.     Linda Whiting and other Agency employees harassed, intimidated, embarrassed, and demeaned Mrs. Nguyen because of her age.

187.     The harassment was severe and pervasive and created a hostile work environment.

188.     The harassment occurred frequently after Linda Whiting became Mrs. Nguyen's first-line supervisor.

189.     The harassment unreasonably interfered with Mrs. Nguyen's work performance because, among other reasons, it caused her to develop severe anxiety and depression and she was constantly fearful of reprisal.

190.     The harassment altered the terms and conditions of Mrs. Nguyen's employment by disabling her mental and physical ability to perform work activities and other major life activities.

191.     The Agency and some of its employees, including, but not limited to, Linda Whiting willfully and intentionally discriminated and created a hostile work environment for Mrs. Nguyen because of her age.

192.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

193.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has also suffered and will continue to suffer among other things: humiliation, embarrassment, emotional distress, and mental anguish.

## COUNT VI
## ADEA – Retaliation

194.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

195.     Mrs. Nguyen engaged in protected activity when she contacted an EEO counselor about her allegations of harassment and discrimination.

196.     The Agency took an adverse employment action against Mrs. Nguyen by suspending her.

197.     Mrs. Nguyen was suspended because she engaged in protected activity.

198.     Mrs. Nguyen would not have been suspended if she had not engaged in protected activity.

199.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

## COUNT VII
## Interference with FMLA Leave

200.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

201.     By virtue of her medical condition, which was caused by the discrimination and harassment she suffered while working at the Agency, Ms. Nguyen was entitled to time off from work under the provisions of the FMLA. 29 U.S.C. 2601 *et seq.*

202.     Ms. Nguyen was entitled to time off from work because she had a serious health condition that made her unable to perform the functions of her employment position.

203.     Ms. Nguyen provided proper notice for the need for her time off from work.

204.     Nevertheless, Defendant, through Linda Whiting, interfered with Ms. Nguyen's right for FMLA leave by denying her the leave for which she was entitled.

205.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, reputational and professional setbacks, and attorneys' fees and costs.

## COUNT IX
### Rehabilitation Act – Failure to Accommodate

206.     Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

207.     Mrs. Nguyen is disabled because of her severe depression, anxiety, and Post-Traumatic Stress Disorder ("PTSD"), which inhibit her ability to perform major life functions, such as her ability to drive, cook, care for herself and her family, concentrate, form short-term memories, and sleep.

208.     Plaintiff reported her disability to Defendant and Defendant was aware of her condition.

209.     Plaintiff requested reasonable accommodations for her condition, and even alerted Defendant of publicly available positions that met her reasonable accommodation criteria.

210.      With a reasonable accommodation, Plaintiff would be able to perform the essential functions of her position.

211.      Defendant denied Plaintiff's reasonable request for accommodation.

212.      Defendant failed to engage in an interactive process with Plaintiff.

213.      Plaintiff has exhausted all administrative remedies by properly filing a complaint with the EEOC for the failure to accommodate. Plaintiff has received a right to sue from the EEOC on this Count.

214.      As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost pay, lost benefits, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

An award in favor of Plaintiff against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, and including:

a.   Compensatory damages, including, but not limited to, future pecuniary loss, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

b.   Back pay, including the value of lost benefits;

c.   Front pay, including the value of lost benefits;

d.   Attorneys' fees and costs;

e.   Expenses;

f.   Pre-judgment interest;

g.   Post-judgment interest;

h.  Equitable remedies, including, but not limited to, assignment to a different branch and/or assignment to new supervisors;

i.  Restoration of lost government pay scale step increases;

j.  Removal of any and all negative information from Plaintiff's personnel file that has occurred as a result of her discrimination and/or hostile work environment, and

k.  Such other and further relief, in law or in equity, as the Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable by jury.

Date: July 23, 2018                                     Respectfully submitted,


_____*/s/ James C. Bailey*_____
James C. Bailey (D. Md. # 17762)
BAILEY & EHRENBERG PLLC
1015 18th Street N.W., Suite 204
Washington, DC 20036
Tel: 202-331-1331
Fax: 202-318-7071
jcb@becounsel.com