**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

THUY-AI NGUYEN,                               *

     Plaintiff,                              *

     v.                                      *          Civil Action No. 8:18-cv-00492-PX

STEVEN MNUCHIN,                               *

     Defendant.                              *
                                      ***

<u>**MEMORANDUM OPINION**</u>

Pending in this employment discrimination case is Defendant Steven Mnuchin, Secretary of the Treasury, ("the Treasury" or "Treasury")'s motion to dismiss, or in the alternative, for summary judgment.  ECF No. 13.  The motion has been fully briefed and no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the Court grants in part and denies in part the Treasury's motion for summary judgment.

**I.      Background**

    **A.  The Amended Complaint**

In the Amended Complaint, Plaintiff Thuy-Ai Nguyen avers that she suffered race, national origin, gender, and disability discrimination.  Nguyen, a woman of Vietnamese descent born in 1965, worked for the Internal Revenue Service as an Information Technology ("IT") Specialist since 2006.  ECF No. 9 ¶¶ 8, 14.  Although not her full-time assignment, Nguyen sometimes worked on the database for Tax Exempt/Government Entities Rulings & Agreement Control ("TRAC").  *Id.* ¶ 27.  The TRAC system permits users to track specific projects, but the system has been in "crisis" due to its design and user problems.  *Id.* ¶¶ 26, 30.  Nguyen had some experience with TRAC, but not enough to become proficient in the system. *Id.* ¶ 33,

In May 2013, Linda Whiting, an African American woman, became Nguyen's supervisor

and assigned Nguyen to work on the TRAC project full time.  *Id.* ¶¶ 34–35.  Nguyen asserts, without any specific examples, that other, unnamed "non-Vietnamese, non-Asian, male and/or younger employees" were better suited to work on TRAC than herself.  *Id.* ¶ 45.  Nguyen gives no details to support this claim.

Nguyen believes her assignment to TRAC constituted an adverse employment action because the transfer was a set-up for Nguyen's failure.  *Id.* ¶ 55.  Nguyen received an introductory training course in TRAC, but otherwise asserts that she lacked the skills, experience and training to perform this assignment adequately.  *Id.* ¶¶ 40, 60.  Whiting, as the manager, was the only employee to receive any training on TRAC.  *Id.* ¶ 62.  Nguyen also avers that Whiting imposed unreasonable work deadlines on her, which, in combination with the lack of training, contributed to Nguyen's poor job performance.  *Id.* ¶ 67.  Nguyen, in the end, believes that she was blamed for all TRAC failures.  *Id.* ¶¶ 52–54, 86.

Nguyen also contends that Whiting created a hostile work environment by "yelling," "making negative comments," and "threatening . . . workplace evaluations."  *Id.* ¶ 68.  Although Nguyen emphasizes that performance evaluations are considered for raises, promotions, and the elevation of GS levels, Nguyen does not seem to have missed any of those opportunities.  *Id.* ¶ 69.  On November 5, 2014, however, Whiting did give Nguyen "failing marks in every category on her mid-year performance review" in 2014.  *Id.* ¶ 108. Whiting also required Nguyen to undergo monthly performance evaluations, unlike Nguyen's coworkers.  *Id.* ¶¶ 109–10.

Nguyen also asserts that Whiting was "constantly" hostile to her and treated her "differently" than her non-Vietnamese, non-Asian, male, younger co-workers.  *Id.* ¶ 70.  Although Nguyen characterizes Whiting as angrily "berat[ing]" her in front of other coworkers, Nguyen gives precious little context for these supposed displays of hostility.  *Id.* ¶¶ 70–76.

Nguyen also claims that Whiting "disparaged Mrs. Nguyen's English on multiple occasions" and Cindy McGregor, her white coworker and project lead, "purposefully 'dumbed down' her language when communicating with Mrs. Nguyen." *Id.* ¶¶ 78–79. Again, the Amended Complaint provides very few particulars about this disparaging conduct that Nguyen endured.

Nguyen also recites an array of occasions in which Whiting treated others less poorly than Nguyen. Whiting would "patiently listen[] and acknowledge[]" McGregor and her work, while treating Nguyen with disdain and refusing to credit Nguyen for her work. *Id.* ¶¶ 85–86. Whiting also praised William Chester, an African American male, for his work but did not acknowledge Nguyen for her contributions. *Id.* ¶ 87. Nguyen also summarily asserts that Nguyen's second level supervisor, Norman Keith, "also discriminated against [her] and contributed to the hostile work environment." *Id.* ¶ 101. Keith did not assist Nguyen with "the way Linda Whiting treated her" and during one meeting on July 2, 2014, "physically threatened [Nguyen] by pounding on his desk." *Id.* ¶¶ 103, 105.

During a time not altogether clear from the Amended Complaint, Whiting also disregarded Nguyen's therapist's explanation that Nguyen should be on a temporary part time status. *Id.* ¶ 98. Whiting instead demanded that Nguyen returned to full time work immediately. *Id.*

At some point, again not clear from the Amended Complaint, Nguyen engaged in what she characterizes as "protected EEO activity in an effort to rectify the harassment and discrimination that she faced." This included attending an informal mediation session on August 25, 2014. *Id.* ¶¶ 114–15. The next day, Keith proposed that Nguyen be suspended without pay for one day, which took effect on November 7, 2014, while Nguyen was on sick leave undergoing treatment for her depression. *Id.* ¶¶ 116–17. Nguyen contends that she suffers from

"severe depression, severe anxiety, and mental anguish," which has substantially limited her work functioning, all as a result of enduring Whiting's abuse. *Id.* ¶ 121. Nguyen asked to take leave under FMLA, which Whiting refused. *Id.* ¶ 130. Nguyen also sought transfer to another department, as recommended by Nguyen's doctors, to accommodate her mental health challenges. *Id.* ¶ 137. Nguyen provided medical documentation to support the need for such accommodation but, to date, she claims that Treasury has not addressed adequately her disability. *Id.* ¶¶ 142–43.

### B. The Administrative Record

Prior to filing this action, Nguyen pursued two separate discrimination complaints with the Treasury. ECF Nos. 19-1, 20. Formal investigations on both produced nearly 3,600 pages of record evidence, select portions of which the Treasury included in its motion. The Court thereafter ordered production of the entire record.[1] The pertinent parts are summarized as follows.

The Treasury began the TRAC program without providing any IT employees with the training of which Nguyen claims she alone was deprived. No funding was available for TRAC training beyond a single introductory course that Nguyen attended. ECF No. 13-2 at 46, 81, 91. Treasury informed any employee who requested training that none would be forthcoming for budgetary reasons. ECF No. 13-2 at 90 (declaration questions of Nguyen's former manager) ("I put in several requests for a class on Oracle Forms and Reports but was told there was no funding."); ECF No. 13-2 at 80 (McGregor) ("[W]e all asked for training and were all refused."); ECF No. 12-3 at 95 (Karen Rondini Taylor) ("We were told there was no money in the budget to send me to any formal training, . . . so Cindy researched textbooks on amazon.com, one of which

---

[1] The Court grants the consent motion to seal the exhibits containing sensitive medical information. ECF No. 19; *see also Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

I purchased with my own money for about $5 total.").  Instead, employees were expected to teach themselves the necessary skills to implement their programs or learn through informal training, both of which were available to Nguyen.  ECF No. 13-2 at 82, 29.

Despite being told repeatedly that no such training was available, Nguyen persisted in maintaining that, unlike her coworkers, she could not do the work without formal training.  ECF No. 19-6 at 12, 31.  During two meetings held on July 2, 2014, Nguyen's singular focus on the issue of training derailed the meeting agendas.  ECF No. 13-2 at 47, 72.  According to coworkers, Nguyen interrupted Whiting numerous times while ignoring questions that Whiting had asked her.  ECF No. 19-1 at 59.  Coworkers also described Nguyen's behavior—on numerous occasions—as "rude."  ECF Nos. 19-1 at 29; 19-2 at 428; 19-4 at 632.  Whiting often became frustrated while meeting with Nguyen (ECF No. 19-5 at 81) and interrupted Nguyen in an effort to get Nguyen to stop speaking.  ECF No. 19-4 at 352.  On at least two occasions, Whiting and Nguyen's conversation reached a fevered pitch with Whiting yelling at Nguyen. *See* ECF No. 19-4 at 367 (describing a shouting match between Whiting and Nguyen); ECF No. 19-5 at 253 (observing that Whiting yelled unspecified comments at Nguyen).

As for Nguyen's performance evaluations, the record reflects that Nguyen's 2014 midyear review had failing marks in eleven categories, meets standards in two categories, and skills not exhibited in two categories.  ECF No. 13-2 at 54–57.  Four of the five other employees who Whiting later evaluated monthly were non-Vietnamese.  ECF No. 19-3 at 137.

As to Whiting and McGregor making disparaging comments about Nguyen's command of English, the record reflects two particular relevant instances.  In the first, Whiting asked Nguyen whether she had contacted a coworker for assistance.  ECF No. 19-2 at 179–80.  Nguyen responded, "Yes, I share the information" with the coworker.  *Id.*  Whiting responded to Nguyen

that "[s]haring and asking for help are two different things." *Id.* Second, in reviewing Nguyen's summary of a meeting that had taken place with Whiting, Nguyen wrote that "the meeting had to be terminated and ended at 9:10 AM because Linda [Whiting] had another meeting at 9:15 AM on the same day." ECF No. 19-2 at 203. Whiting responded, "The meeting was scheduled from 8:30 – 9:15. Therefore it was not terminated, it ended." *Id.* Whiting also corrected other coworkers' word choice, including that of one white American male and one African American male. ECF Nos. 19-1 at 42; 19-5 at 284.

As to Keith's involvement with Nguyen, he recommended Nguyen for disciplinary action because of her constant and unending inquiries about TRAC training. On July 2, 2014, Keith and Whiting spent ninety minutes arguing with Nguyen over the need for formal training, despite Nguyen having been told repeatedly that no such formal training exists for anyone in the department. ECF No. 13-2 at 48, 72–73, 86. That same day, Whiting sent Keith an email asking if she should take disciplinary action against Nguyen, to which Keith replied, "Start immediately." ECF No. 13-2 at 61. On July 9, Whiting and Keith decided to pursue a one-day suspension after human resources suggested that a reprimand was insufficient. ECF No. 19-4 at 46, 60. Treasury Guidelines provide a range of discipline for first-time offenses, dependent on the nature of the infraction. The suggested discipline for the relevant infractions includes admonishment or written reprimand through suspension and in certain circumstances, removal. ECF No. 19-5 at 485, 487–88.

On July 11, 2014, the Treasury informed Nguyen of its intention to suspend her for one day for "failure to follow managerial directives (including directives regarding assigned work), insubordination and continuing behavior which disrupts planned meetings." ECF No. 13-2 at 21. Five days later, Nguyen contacted the EEO for her initial interview. *Id.* at 17.

On August 22, 2014, the Treasury sent a notice of proposed disciplinary suspension, which was implemented by Nguyen's third-level supervisor, Linda Gilpin, on November 7, 2014. *Id.* at 34, 38–40.[2]  The notice stated that the suspension was being imposed to address Nguyen's failure to follow management's instruction that she, like all employees, must learn how to perform her work without formal training, as well as the disruption she had caused at the July 2nd meetings. *Id.* at 34, 38.

With regard to Nguyen's mental health, Nguyen's doctor documented not only that Nguyen suffered from depression and anxiety, but that workplace stresses "significantly worsened" her condition. ECF No. 20 at 143.  Nguyen's doctor further noted that Nguyen's mental health challenges affect her concentration, short term memory, and ability to drive safely on busy streets. *Id.* at 108; ECF No. 20-1 at 27, 31.  The doctor recommended that Nguyen be transferred to a different project under different supervisors, as well as be given a part-time "flexi-place" work schedule and training. ECF No. 20 at 89, 121, 143.

In response, the Treasury offered the following accommodations:  placement of Nguyen in a new position with different first- and second-line supervisors, additional training and a part-time schedule for the first six months. ECF No. 13-6 at 7.  Nguyen rejected that position because she would have the same third-level supervisor, Gilpin, and would be at the same geographic location. *Id.* at 8, 31.

The Treasury thereafter performed consecutive 60-day and 30-day searches for suitable positions and found one additional placement that met the above criteria. ECF No. 13-6 at 12, 18, 27; ECF No. 20-1 at 200.  Nguyen rejected the position, however, because it was full-time. *Id.* at 201.  The Treasury did not offer any other positions to Nguyen even though Nguyen found

_____

[2]  Nguyen describes Gilpin as her third-level supervisor, while Gilpin refers to herself as Nguyen's fourth-level supervisor.  ECF No. 20-1 at 135.

five active vacancies that met her stated criteria. ECF No. 20 at 95. Nguyen was not placed and has been on indefinite leave without pay since July of 2014. ECF No. 9 ¶ 128.

After exhausting her administrative remedies, Nguyen filed suit in this Court against the Treasury for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ECF No. 1. The Amended Complaint added claims for denial of reasonable accommodations under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* ECF No. 9. The Treasury's motion to dismiss, or in the alternative motion for summary judgment, followed. ECF No. 13.

## II.     Standard of Review

The Treasury urges the Court to consider its motion as one for summary judgment even though formal discovery has not yet occurred. Nguyen filed an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. The purpose of this affidavit is to ascertain what additional discovery is needed for the non-movant to challenge adequately a summary judgment motion. See Fed. R. Civ. P. 56(d). Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." *Harrods Ltd. V. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

In urging the Court to allow additional discovery prior to deciding the motion, Nguyen's affidavit broadly asserts that she "needs discovery to determine facts (including, but not limited to motives and intentions), which are outside of Plaintiff's control and, in some cases, are under

Defendant's control."  ECF No. 16-2 ¶ 6.  Nguyen's affidavit fails to identify any facts that she reasonably anticipates would be discovered or a single individual she wishes to depose.  *See Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) ("Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.  Rather, . . . the facts identified in a Rule 56 affidavit must be essential to the opposition.") (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011); *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011)) (internal quotation marks omitted).

Nguyen's conclusory assertions are insufficient where the combined administrative record is voluminous.  See ECF Nos. 18–20; *Radi v. Sebelius*, 434 F. App'x 177, 179 (4th Cir. 2011) (holding that similar conclusory assertions were inadequate where "the administrative record at the very least should have enabled [the plaintiff] to produce an affidavit sufficiently detailed to meet the requirements of Rule 56[d]").  Both parties have also submitted evidence outside the four corners of the Amended Complaint and have been given reasonable opportunity to present all pertinent material.  Thus, the Court will treat the motion as one for summary judgment.

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must

present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)).  Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    Analysis

The Treasury urges the Court to grant its requested relief on several grounds.[3]  The Court addresses each in turn.

### A.  Exhaustion of Administrative Remedies

The Treasury first asserts that Nguyen failed to exhaust her Title VII and ADEA claims in a timely manner, thus compelling dismissal.  Although the Court parts company with the Treasury that an untimely petition deprives the Court of jurisdiction, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 n.2 (4th Cir. 2009), the Court finds that Nguyen has failed to exhaust administrative remedies as to Nguyen's assignment to the TRAC project in May 2013, and thus, she fails to state a claim.

Under Title VII, before a federal employee may file a complaint in federal court, the complainant must first consult an Equal Employment Opportunity Counselor within 45 days of the alleged acts of discrimination.  29 C.F.R. § 1614.105(a)(1).  Similarly under the ADEA,

---

[3]  Nguyen conceded and withdrew her claim under the Family Medical Leave Act.  ECF No. 16 at 5 n.1.

where a federal employee opts to first pursue the EEO's administrative process, the employee must do so within 45 days of the discriminatory conduct. *Greenblatt v. Nat'l Pork Bd.*, No. ELH-15-00054, 2015 WL 6549578, at *7 (D. Md. Oct. 27, 2015) (quoting 29 C.F.R. § 1614.105(a)(1)). Alternatively, if the employee chooses to file first in federal court, the employee must give notice to the EEO "within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d).

For discrete acts of alleged discrimination, a plaintiff must exhaust administrative remedies for that particular act. *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007). Acts that fall outside the exhaustion period may still be considered timely if such acts are part of a continuing violation which occurred even partially within the filing period. *E.E.O.C. v. Phase 2 Invs., Inc.*, 310 F. Supp. 3d 550, 575 (D. Md. 2018); *Lurie v. Meserve*, 214 F. Supp. 2d 546, 550–41 (D. Md. 2002). The line between discrete discriminatory acts and continuing violations "can be difficult to discern." *Phase 2 Invs.*, 310 F. Supp. 3d at 575. Courts consider whether "the pre- and post-limitations period incidents involve[] the same type of employment actions, occur[] relatively frequently, and [are] perpetrated by the same managers." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120–21 (2002) (quoting and affirming on relevant point *Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1017 (9th Cir. 2000)).

Nguyen's assignment to the TRAC project occurred on May 2, 2013. ECF No. 9 ¶ 35. For her to have timely pursued administrative claims as to this assignment, Nguyen must have filed with the EEO by June 16, 2013, and, as to her ADEA claim in this Court, by October 29, 2013. However, Nguyen's first contacted the EEO on July 16, 2014. ECF No. 13-2 at 17. Thus, any claims stemming from Treasury's assignment to TRAC are untimely.

Nor does Nguyen demonstrate adequately that this reassignment was part of a "pattern of

discrimination" designed to bring about her failure. Where a plaintiff brings individual claims, the existence of a discriminatory policy does not transform a discrete act into a continuing violation. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) ("[E]ven if Williams is correct that Giant Food's failures to promote her during the applicable limitations period were part of a broader pattern or practice of discrimination, those failures to promote remain discrete acts of discrimination."); *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007). Nguyen's assignment to work on the TRAC project full time was a discrete, one-time change in job duties, "dissimilar in nature" to her other disparate treatment claims of lack of training and later disciplinary action. *See Hall v. Bausch & Lomb, Inc.*, No. DKC 10-0215, 2012 WL 3536755, at *8 (D. Md. Aug. 13, 2012); *Frazier v. Donahoe*, No. PWG-14-3974, 2016 WL 1045853, at *5 (D. Md. Mar. 15, 2016). Thus, Nguyen's disparate treatment claim based upon her May 2013 assignment to TRAC was not timely exhausted.[4]

### B. Title VII and ADEA Discrimination Claims

The Court next considers Nguyen's Title VII and ADEA claims. Nguyen contends that she suffered discrimination on the basis of her race, national origin, gender, and age. *See, e.g.*, ECF No. 9 ¶¶ 146, 175. Title VII and the ADEA together provide that "[a]ll personnel actions affecting" federal employees "shall be made free from discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a), as well as age. 29 U.S.C. § 633a(a). Nguyen more particularly brings disparate treatment, hostile work environment, and retaliation claims against the Treasury.

### i. Disparate Treatment

---

[4] The Court recognizes that untimely acts may be considered as part of a hostile work environment claim. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016). The Court considers Nguyen's TRAC assignment in that context.

Where a plaintiff marshals no direct evidence of discrimination under Title VII and the ADEA, the Court evaluates her claims using the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 541 (D. Md. 2015). Under this framework, plaintiff must first establish a *prima facie* showing of discrimination. Nguyen avers that she was treated disparately when her requests for training were denied and she was unfairly disciplined. To demonstrate a *prima facie* case of disparate training, a plaintiff "must show that (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649–50 (4th Cir. 2002).

If Nguyen establishes her *prima facie* case, the burden shifts to the Treasury to offer a legitimate, non-discriminatory reason for the adverse employment action. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000); *Langerman v. Thompson*, 155 F. Supp. 2d 490, 496 (D. Md. 2001). If the Treasury provides such a reason, the burden then shifts back to Nguyen to raise a genuine dispute as to whether the Treasury's proffered reason is mere pretext for discrimination. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006); *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001). Although the framework "involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004); *see also Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995); *see also White v. W.R. Winslow*

*Memorial Home, Inc.*, No. 99-1781, 211 F.3d 1266 (Table), 2000 WL 346497 (4th Cir. Mar. 15, 2000) (ADEA).

Regarding Nguyen's age discrimination claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (rejecting "mixed-motives" age discrimination claims, in contrast to Title VII discrimination claims). "An employer's reliance on factors that are analytically distinct from age in reaching the adverse decision rules out age as its but-for cause." *Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 705 (D. Md. 2013).

Assuming for the sake of argument that Nguyen could establish a *prima facie* case, she has generated no evidence to show that she was treated any differently than her IT coworkers. It is uncontroverted that the Treasury did not provide TRAC training to anyone due to lack of funding. ECF No. 13-2 at 80, 90, 95. The only individual who received training since May 2013 was Whiting, who, as a supervisor, was not similarly situated to Nguyen. *See Popo v. Giant Foods, LLC*, 675 F. Supp. 2d 583, 590 (D. Md. 2009). Thus, viewing the record evidence most favorably to Nguyen, she cannot prove that Treasury acted adversely to her in a manner giving rise to an inference of discrimination. *See Carter v. Md. Aviation Admin.*, No. CCB-04-3065, 2006 WL 1892402, at *5 (D. Md. May 31, 2006).

Nguyen also contends that she was subject to discriminatory discipline. As to this claim, Nguyen must demonstrate that she was disciplined more harshly than similarly situated employees outside the protected group who had committed similar misconduct. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Barnes v. ISG Sparrows Point, LLC*, No. BPG-10-2492, 2011 WL 4596058, at *7 (D. Md. Sept. 30, 2011). The Treasury began the

disciplinary process against Nguyen after the failed July 2nd meetings, according to Whiting and Keith, where Nguyen insisted on discussing the need to provide TRAC training. ECF No. 13-2 at 48, 72–73, 86. In fact, the Treasury maintained throughout that Nguyen's repeated insistence on receiving training that was simply unavailable in her department had adversely impacted her performance in her job more generally. ECF No. 13-2 at 21, 34, 38, 54–57, 60. Nguyen's 2014 midyear review notes that she "spen[t] more time avoiding completing assigned tasks than actually attempting to do the work," she continually stated she had "not received training to complete [her] assignments," and she was "frequently combative." *Id.* at 54–57.

Nguyen also does not dispute that that she "made several requests for training courses." ECF No. 9 ¶ 60; *see also* ECF No. 13-2 at 27 (Nguyen email to Keith stating, "I lack of training, have very little experience and skills, no information and tool to do my job"). Nguyen also disrupted meeting agendas continually to request formal training. On the July 2nd meeting with Whiting and McGregor, "[t]he entire hour was spent arguing" about the need for formal training, and the participants "never got to the intended purpose of the meeting." ECF No. 13-2 at 86, 83 (McGregor). Nguyen then requested a second meeting to discuss the TRAC transition. *Id.* at 33. During the second July 2nd meeting with Whiting and Keith, Nguyen again spent the entire meeting—ninety minutes—debating the need for training. *Id.* at 47–48, 73.

By contrast, no evidence exists that other employees engaged in comparable conduct for which they received more lenient treatment. Other employees who had been denied training responded by engaging a successful process of self-directed learning. ECF No. 13-2 at 86. Nguyen, in contrast, simply maintained she "could not do [her] work" and did not do it. ECF No. 19-2 at 9; *see also* ECF No. 19-10 at 446 (Nguyen email to Whiting stating, "It is for sure I can't work on TRAC project by me only").

To be sure, Nguyen avers generally that "[o]n more than one occasion, male, non-Asian employees in the TEGE office talked back (refused to directly follow instructions without questioning the instruction) to Linda Whiting, but none of these individuals were disciplined." ECF No. 9 ¶ 107. But Nguyen can point to no record evidence supporting these allegations. *See* ECF No. 16 at 17–18. The record evidence includes only one other example of a Hispanic male employee who refused to take on management tasks and was not disciplined. ECF Nos. 19-4 at 608; 19-5 at 284. Viewing this example most favorably to Nguyen, a singular instance of another employee refusing to take on tasks *not* within his job function, cannot be compared to Nguyen's repeated, persistent refusal to accept that she must work on TRAC without formal training, as well as her consistent refusal to work within the parameters set for all similarly situated IT employees. No reasonable juror could plausibly infer that Treasury was motivated by discriminatory animus when disciplining Nguyen based on the manner in which Treasury addressed the Hispanic employee's situation.

Without evidence of comparable misconduct, Nguyen has not carried her burden at the summary judgment stage. Nguyen has not provided evidence of adequate comparators and so cannot demonstrate that the she suffered more severe discipline than other similarly situated employees outside her protected group. *See Nesbitt v. Univ. of Md. Med. Sys.*, No. WDQ-13-0125, 2013 WL 6490275, at *7 (D. Md. Dec. 6, 2013). Accordingly, summary judgment on the disparate treatment claims is granted in Treasury's favor.

### ii. Hostile Work Environment

Nguyen also contends that she was forced to work in a hostile environment, in violation of Title VII and the ADEA. To prove a hostile work environment claim, Nguyen must demonstrate "that: (1) [s]he experienced unwelcome harassment; (2) the harassment was based

on [her] race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006).[5] Nguyen must show that her work place was "'permeated with discriminatory intimidation, ridicule, and insult.'" *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Howerton v. Bd. of Educ. of Prince George's Cty.*, No. TDC-14-0242, 2015 WL 4994536, at *14 (D. Md. Aug 19, 2015).

In support of this claim, Nguyen accuses Whiting of making negative comments about Nguyen at every staff meeting, refusing to let Nguyen speak and threatening to write negative evaluations of Nguyen (which Whiting eventually did). ECF No. 9 ¶¶ 68, 71, 77, 95, 108. Nguyen further avers that Whiting and McGregor "criticized Mrs. Nguyen's English skills," and that Keith "physically threatened" her by pounding his fist on his desk. *Id.* ¶¶ 79, 105.

Although the record evidence reflects a growing frustration in the department, it does not demonstrate that Nguyen suffered a pervasive and hostile environment fueled by discriminatory animus. The record, viewed most favorably to Nguyen, reflects that Whiting became angry with Nguyen and at times criticized Nguyen's lack of productivity. Likewise, the evidence supports that Keith did pound his fist on the table once, exasperated by Nguyen's campaign for TRAC training. And, in two emails, Whiting sought greater clarity of her exchange with Nguyen. ECF No. 19-2 at 179–80. (Whiting informing Nguyen that the terms "[s]haring and asking for help are two different things" and discussing the meaning of "terminated" versus ended). While harsh or unpleasant, these events together do not rise to the level of a workplace permeated with hostility

---

[5] This circuit has only "assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older." *Id.* at 746 n.14.

and harassment.  *See Vincent v. MedStar S. Md. Hosp. Ctr.*, No. TDC-16-1438, 2017 WL

3668756, at *9–10 (D. Md. Aug. 22, 2017), *appeal dismissed*, No. 17-2093, 2017 WL 8236033

(4th Cir. Nov. 9, 2017) (finding no hostile work environment where supervisor yelled at

employee, called her "stupid," refused to communicate with her, and harassed her almost daily);

*cf. Buchhagen v. ICF Int'l, Inc.,* 545 F. App'x 217, 219 (4th Cir. 2013).

Alternatively, no evidence exists that Whiting or Keith acted with discriminatory intent.

Although criticizing "linguistic characteristics of a national origin group," can be considered

evidence of discrimination based on national origin, 29 C.F.R. § 1606.1, no reasonable reading

of the emails permits such an inference.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 613–14 &

n.6 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (finding no hostile work environment

where a supervisor questioned Plaintiff's English language abilities, "yelled at Plaintiff, told her

she was incompetent, pushed her down in her chair, and blocked the door to prevent Plaintiff

from leaving while he continued to yell at her").  Nor does the record evidence support that

Whiting's criticisms of Nguyen, and Keith's loss of patience were discriminatory.  Summary

judgment is granted in Treasury's favor on the hostile work environment claims.

### iii. Retaliation

Nguyen next argues that the one-day suspension she received amounts to retaliation for

her having contacted the EEO.  Title VII and ADEA retaliation claims are governed by the same

burden-shifting framework as discriminatory treatment claims.  *See Strothers v. City of Laurel*,

895 F.3d 317, 327 (4th Cir. 2018); *Stoyanov v. Winter*, No. RDB-05-1567, 2006 WL 5838450, at

*11 (D. Md. July 25, 2006), *aff'd*, 266 F. App'x 294 (4th Cir. 2008).  If a plaintiff establishes a

*prima facie* retaliation claim, the burden then shifts to the defendant "to show that its purportedly

retaliatory action was in fact the result of a legitimate non-retaliatory reason."  *Id.* at 328

(quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). A *prima facie* case of retaliation requires Nguyen to show that: (1) she engaged in protected activity, (2) the Treasury took an adverse action against her, and (3) a causal link exists between the two. *Id.* at 327; *Rhoads v. FDIC*, 257 F.3d 373, 391–92 (4th Cir. 2001). However, where the protected activity occurs *after* the adverse action, a retaliation claim, quite logically, must fail as a matter of law. *Rhodes v. Montgomery Cty. Dep't of Corr. & Rehab.*, No. 12-cv-03172-AW, 2013 WL 791208, at *10 (D. Md. 2013).

The record evidence indisputably demonstrates that Nguyen contacted the EEO only after the disciplinary process was set in motion. On July 2, 2014, after Nguyen derailed the staff meeting, Whiting and Keith began the disciplinary process by contacting Human Resources to ascertain a possible sanction. ECF No. 13-2 at 61. On July 11, Keith informed Nguyen that he intended to suspend Nguyen for one day. *Id.* at 21. Five days later, Nguyen first contacted the EEO. *Id.* at 17. The record plainly shows, therefore, that Keith and Whiting had decided to impose a one-day suspension before Nguyen contacted the EEO, and behaved consistently with that decision after Nguyen's EEO contact. *See Sammarco v. Bd. of Educ. of Prince George's Cty.*, No. 1:13-CV-01079-CCB, 2013 WL 5274277, at *5 (D. Md. Sept. 16, 2013), *aff'd sub nom. Sammarco v. Prince George Pub. Sch.*, 556 F. App'x 200 (4th Cir. 2014).

In an attempt to save this claim, Nguyen points to subsequent events relating to the implementation of the one-day suspension that occurred in tandem with pursuing her EEO claim. Nguyen received a second notice of intent to impose a one-day suspension the day after her unsuccessful EEO mediation. ECF No. 9 ¶¶ 115–16. *But see* ECF No. 13-2 at 34 (copy of second notice of discipline dated August 22, before the mediation). Then, about a month after she filed her formal EEO complaint on September 13, she was finally suspended for one day.

*See id.* at 38, 7.  That the EEO and disciplinary processes ran in parallel does not alter the most salient fact—that Treasury's disciplinary process began *before* Nguyen's EEO activity and did not become more harsh or onerous in response to Nguyen's pursuit of her EEO remedies.  The mere temporal proximity between discipline and EEO contact, viewing the facts most favorably to Nguyen, is simply insufficient to sustain a retaliation claim.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers . . . proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality."); *Phillips v. Raytheon Applied Signal Tech., Inc.*, No. ELH-11-3230, 2013 WL 5440802, at *28 (D. Md. Sept. 27, 2013), *aff'd*, 556 F. App'x 265 (4th Cir. 2014) ("'When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.'") (quoting *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)).  Summary judgment must be entered for the Treasury on Nguyen's retaliation claims.

### C.  Rehabilitation Act

Nguyen's failure to accommodate claim is a different matter.  Nguyen contends that Treasury's refusal to place her in a vacant position which would allow her to perform her essential job functions amounts to a violation of the Rehabilitation Act.  The Rehabilitation Act prohibits discrimination by federal employers, including the failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A) and applying the same standards as under the Americans with Disabilities Act).  To establish a *prima facie* case of failure-to-accommodate, Nguyen "must

show that (1) she qualifies as an 'individual with a disability' as defined in 29 U.S.C. § 705(20); (2) the [Treasury] had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the [Treasury] refused to make any reasonable accommodation." *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015) (quoting 29 U.S.C. § 794(a)).

A qualifying disability includes "a physical or mental impairment that substantially limits one or more major life activities." *Taylor v. Rite Aid Corp.*, 993 F. Supp. 2d 551, 564 (D. Md. 2014) (quoting 42 U.S.C. § 12102(1)). Major life activities include learning, reading, concentrating, thinking, and working. 42 U.S.C. § 12102(2)(A). Because the definition of disability is construed broadly, whether an individual has a qualifying disability "'should not demand extensive analysis.'" *Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F. Supp. 3d 459, 468–69 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018) (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015)).

The Treasury first argues that Nguyen's difficulty working with Whiting does not amount to a disability because an individual is considered "impaired" only where "'she is unable to work in a broad range of jobs.'" *Lewis v. Balt. City Bd. of Sch. Comm'rs*, 187 F. Supp. 3d 588, 598 (D. Md. 2016) (quoting *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 468 (4th Cir. 2002)). The record evidence construed most favorably to Nguyen, however, supports a reasonable finding that Nguyen was not just limited in her work. Nguyen's doctor determined that her mental health condition impacted several major life activities such as "executive function, shortterm [sic] memory and concentration," and her ability to drive. ECF Nos. 20-1 at 30; 20 at 108; *see also* ECF No. 9 ¶ 207. The Department of Health and Human Services also concluded that Nguyen's disorders visit "substantial limitations in the major life activities of eating and

sleeping, as well as her mental and emotional state, manifesting as difficulty concentrating or focus, increased emotional lability, difficulty making decisions, and problems with short-term memory." ECF No. 20-1 at 189. A reasonable jury could find that Nguyen qualified as an individual with a disability.

The Treasury alternatively argues that Nguyen's request for a new supervisor constitutes an unreasonable accommodation. A reasonable accommodation must provide "'an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities.'" *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 416 (4th Cir. 2015) (quoting H.R. Rep. No. 101-485, pt. 2, at 66 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 349)). If the accommodation would impose an undue hardship on the employer, however, it is not reasonable. *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). "[A]t the summary judgment stage, the employee 'need only show that an accommodation seems reasonable on its face,' and then the employer 'must show special (typically case-specific) circumstances that demonstrate undue hardship." *Brady*, 222 F. Supp. 3d 459 at 469 (quoting *Reyazuddin*, 789 F.3d at 414).

The Treasury points to EEOC guidance that states, "An employer does not have to provide an employee with a new supervisor as a reasonable accommodation." Equal Employment Opportunity Commission, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (May 9, 2019), https://www.eeoc.gov/policy/docs/accommodation.html. Even so, this guidance does not bar Nguyen's claim. This is because a reasonable accommodation can include reassignment to a vacant position. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002) (citing 42 U.S.C. § 12111(9)(B)). Accordingly, because Nguyen contends that Treasury failed to provide a

reasonable accommodation by assigning her to a vacant position, the claim survives challenge.

Nguyen has marshalled some evidence that Treasury maintained vacancies which Nguyen could fill and that met her needs. The vacancies included positions with a different third-level supervisor, an office closer to Nguyen's home, and the ability to telework. *Compare* ECF No. 20 at 95, *with* ECF No.20-1 at 180. A transfer to such a position would be reasonable on its face. *See* ECF No. 20 at 89, 121, 143 (suggesting that such accommodations would provide Nguyen with a meaningful equal employment opportunity); *see also Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 324 (4th Cir. 2011). Moreover, a reasonable jury could find that the very existence of such vacant positions undermines the Treasury's contention that accommodating Nguyen in this manner would impose an undue hardship. *See* ECF No. 20-1 at 167. The Treasury's argument in this regard is unavailing.

The Treasury lastly argues that it provided Nguyen with a reasonable accommodation when she was offered a new project, with new first- and second-level supervisors, a part-time schedule for six months, and the possibility of flexi-place after the first six months. Missing from this alternative, however, was a different third-level supervisor, an office closer to her home, or guaranteed flexi-place. Although an employer is not required to provide the specific accommodations requested or even the best accommodations, *Scott v. Montgomery Cty. Gov't*, 164 F. Supp. 2d 502, 508–98 (D. Md. 2011), Nguyen has raised a genuine issue of material fact of whether these additional accommodations were necessary to provide her with a meaningful equal employment opportunity. Nguyen's doctor stated that if Nguyen works under "the same supervisors[,] her condition will deteriorate." ECF No. 20 at 108. Furthermore, the Department of Health and Human Services explains that flexi-place "would remove some of [Nguyen's] triggers and . . . improve her focus and thereby her ability to complete the essential job

functions." ECF No. 20 at 121. On these facts, a jury could find that the Treasury denied Nguyen reasonable accommodations. Summary judgment must be denied on this claim.

## IV. Conclusion

For the foregoing reasons, Treasury's motion, construed as one for summary judgment, is granted in part and denied in part. ECF No. 13. A separate Order follows.


5/28/2019_____               _____/S/_____
Date                                               Paula Xinis
                                               United States District Judge