IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THUY-AI NGUYEN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:18-cv-00492-PX |
| v. | * | |
| | * | |
| JANET YELLEN, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | *** | |

### MEMORANDUM OPINION

Pending before the Court in this long-running employment discrimination action are Defendant's[1] motions for summary judgment and to strike certain record evidence. ECF Nos. 90 & 113. The motions are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court DENIES the motion to strike and GRANTS the motion for summary judgment.

**I.    Background[2]**

**A.  Nguyen's Employment**

Plaintiff Thuy-Ai Nguyen ("Nguyen") has worked as an IT Specialist for the Internal Revenue Service ("IRS"), an agency within the Department of Treasury ("Treasury"), since 2001. ECF No. 90-4 at 1. In June 2006, she began working for the IRS' Tax-Exempt Government Entity ("TEGE") Section. *Id.* She was physically stationed at the New Carrollton Federal Building campus in Lanham, Maryland. ECF No. 91-3 at 8-9; ECF No. 91-1 at 86.

---

[1] Defendant Janet Yellen has been sued in her official capacity as Secretary of the Department of Treasury.

[2] Except where otherwise noted, the following facts are undisputed and construed in the light most favorable to Nguyen as the non-moving party. *See News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011).

The TEGE Section develops the Employee Plans/Exempt Organizations Determination System ("EDS") and the TEGE Rulings and Agreements Control System ("TRAC"), which are separate software applications. *See* ECF No. 90-10 at 131:8 – 132:15.[3] Nguyen primarily wrote code for EDS programs. ECF No. 90-4 at 1; 91-6 at 31:9-15. In 2013, Linda Whiting became Nguyen's first line supervisor and began assigning her to work on the TRAC project instead. ECF No. 90-14 ¶ 15; ECF No. 91-6 at 41:5-13.

Nguyen struggled adapting to the TRAC project, which required different coding languages and programming skills than those she used for EDS. She also grew frustrated with the lack of available training on TRAC. ECF No. 91-6 at 37:19 – 38:13, 51:20 – 52:21. As a result, Nguyen asked to meet with Whiting to discuss her involvement in this project.

On July 2, 2014, Nguyen and Whiting met to review Nguyen's issues with the TRAC project. *Id.* at 51:8 – 53:13. Nguyen insists that Whiting did not allow her to speak and that the exchange between the two grew tense. *Id.* at 53:14 – 54:8. Whiting and Nguyen met again later in the day with Nguyen's second level supervisor, Norman Keith. Nguyen reiterated her difficulty with working on the TRAC project. The meeting ended abruptly with Keith hitting his desk and yelling at Nguyen. *Id.* at 59:24 – 64:3; ECF No. 90-11 at 50:7-20.

Shortly after, Whiting initiated disciplinary action for a one-day suspension against Nguyen for her allegedly insubordinate behavior during the two meetings, and for generally disrupting the TRAC project. ECF No. 90-1 at 13-14 ¶¶ 26-27; *see also* ECF No. 91-6 at 64:9-14. In response, Nguyen complained to her third level supervisor, Director of Submission Processing Laura Gilpin. Gilpin oversaw a large portfolio of projects, which included TEGE.

---

[3] The Court takes judicial notice of acronyms available on the IRS' public website. *TE/GE Taxpayer Correspondence Procedures*, IRS (Mar. 26, 2021), https://www.irs.gov/irm/part25/irm_25-013-002.

Nguyen never met with Gilpin or received a meaningful response from her.  ECF No. 91:6 at 67:25 – 70:22; *see also* ECF No. 90-12 at 166:9 – 168:10.

Nguyen's experiences at work caused her significant distress and, as a result, she developed severe anxiety and depression.  ECF No. 91-3 at 11-13.[4]  Her symptoms included inability to focus for extended periods of time, short-term memory loss, and difficulty making decisions.  ECF No. 91-1 at 88-90.  On July 27, 2014, Nguyen visited the emergency room at INOVA Fairfax Hospital with suicidal ideations and an inability to sleep.  ECF No. 91-5 at 9.  Doctors diagnosed her as having suffered an anxiety attack and referred her to Dominion Hospital for follow-up treatment.  *Id.* at 22.  On August 12, 2014, Nguyen was admitted for inpatient psychiatric treatment for roughly six weeks.  *See* ECF No. 90-1 at 15 ¶ 32; ECF No. 91-3 at 12; ECF No. 91-1 at 135, 137.  Nguyen used a combination of sick and medical leave to cover the days she could not work.  ECF No. 90-14 ¶ 35.

After her discharge, Nguyen reported to work on September 29 and was physically on campus in October of 2014.  ECF No. 91-6 at 67:1-21; ECF No. 91-3 at 12.  In short order, she reports having experienced a panic attack stemming from her interactions with Whiting and Keith.  ECF No. 91-6 at 67:1-15.  In fact, on October 1, 2014, Nguyen sought on-the-job medical assistance.  *Id.*; ECF No. 91-3 at 12.  Nguyen also obtained a physician's note documenting that her medical conditions were exacerbated by stress in her current assignment and recommending that she take a leave of absence until she could be transferred to another department.  ECF No. 91-1 at 140.

---

[4] The parties dispute the onset of Nguyen's anxiety and depression, but this is immaterial.  *Compare* ECF Nos. 90-1 at 15 ¶ 31 & 112 at 7, *with* ECF No. 104-1 at 4.  The undisputed record reflects that Nguyen's symptoms worsened drastically and she sought treatment around July 2014.

3

Nguyen remained on leave for several months, and under constant medical supervision for anxiety and depression. *See* ECF No. 91-2 at 43. She regularly attended weekly psychiatric appointments in addition to therapy sessions. ECF No. 91-6 at 71:19 – 74:10; *see also* ECF No. 91-1 at 136, 138, 139, 142. On May 8, 2015, Nguyen, still on leave, asked Whiting for an opportunity to discuss "options for reasonable accommodation" or "early/disability retirement." ECF No. 91-2 at 42. On May 14, 2015, Whiting referred Nguyen to the IRS' Disability Office. ECF No. 91-2 at 41. Through the Disability Office, Nguyen submitted an accommodation request in which she sought "to be transferred to a new project and new division under new supervision, which is supportive and nurturing; provide training; work on a part time schedule"; and "flexiplace," or telework. ECF No. 91-1 at 31-33. In support of the request, Nguyen submitted a letter from one of her treating physicians, which described her depression and anxiety disorders as "severe" and "related to traumatic experiences at her workplace involving her current supervisors." ECF No. 91-1 at 108. The physician concluded that if Nguyen "is not relocated to a different department/project with new supervisors and forced to return to her current position with the same supervisors her condition will deteriorate." *Id.*

In response, Whiting met with the IRS' Reasonable Accommodation Coordinator, Cynthia Washington, to discuss the feasibility of Nguyen's request. ECF No. 91-2 at 192. Washington was "responsible for processing all requests for reasonable accommodation" and worked closely with employees and supervisors to facilitate such requests. *Id.* at 215. Whiting explained to Washington that IRS was already reorganizing such that she would no longer directly supervise Nguyen. *Id.* at 192. Washington communicated this development to Nguyen, but Nguyen was not satisfied because the chain-of-command above Whiting would otherwise

4

remain the same. Nguyen therefore asked that she be transferred to an entirely different department. *Id.*

Washington and Nguyen met again on August 26 and September 15, 2015, to discuss how IRS could accommodate Nguyen short of her requested transfer. *Id.* at 193. At the first meeting, Nguyen voiced that nothing short of transfer out of her department would be acceptable. At the second meeting, Washington informed Nguyen that IRS would likely not be able to accommodate the request for a transfer away from Gilpin as the third level supervisor. *Id.* Washington also referred Nguyen for an independent medical assessment through Federal Occupational Health Service ("FOH"). *Id.* at 193-95.[5]

Although the FOH evaluator agreed that Nguyen suffered from anxiety, he did not concur that Nguyen's request for new supervisors was a reasonable accommodation. *Id.* at 188-90. Nonetheless, in a memorandum dated November 24, 2015, IRS offered Nguyen another placement in a different division under a different supervisory chain, to work on a completely new project. ECF No. 91-1 at 34. Additionally, this placement met many of Nguyen's other demands such as on-the-job training, part time work during the first six months while she was in training, and eventual eligibility for telework. *Compare* ECF No. 91-1 at 34, *with* ECF No. 91-1 at 31.

As to this position, Nguyen sought specific information on who would be her "first level through third level" supervisors. ECF No. 91-2 at 195. She also requested that she be reassigned to work in Fairfax, Virginia, or the District of Columbia. *Id.* Nguyen made this request to address the "very significant decline in her functioning and her ability to sustain her attention"

---

[5] The FOH is a "physician or health service provider under contract with the IRS to provide medical consultation in cases of individual request(s) for reasonable accommodation under the Rehabilitation Act[.]" ECF No. 91-2 at 211.

5

for which her treating physician recommended telework or shortening her commute. ECF No. 91-1 at 143. Nguyen also informed Washington about a potential vacancy for an IT Specialist position in Treasury's "HR Connect Program Office" located in the District of Columbia. *Id.* at 195.

Washington responded to Nguyen, first to clarify that the potential placement offered did not include the previous direct supervisory chain; however, Washington also explained that because training for the position could only be accomplished at the Maryland campus, assignment to Fairfax or the District of Columbia was not an option. *Id.* at 153. Washington did not appear to address the specific vacancy in Treasury that Nguyen had put forward.

On February 16, 2016, Nguyen flatly rejected the position proposed by IRS. In Nguyen's view, the transfer would not "effectively offer her any accommodation at all" because it "force[d] her to work in the same stressful work environment." *Id.* at 44-46. This was so, claimed Nguyen, because she would still have to work under the third level supervisor, Gilpin, and on the Maryland campus "within the same TEGE project that is at the base of [her] depression and anxiety." *Id.* at 44-45.

Nguyen next took matters into her own hands. On March 10, 2016, she contacted the office of Chief Counsel at IRS directly to inquire about how she could return to work "under the right conditions." ECF No. 91-2 at 18. She mentioned four vacant IT positions located in the District of Columbia that she had found on her own, but gave no further detail about her suitability for any of the positions. *Id.*; ECF No. 91-4 at 7.

Soon after, IRS met with Nguyen to discuss options that Nguyen had put forward, although the substance of these meetings is not clear from the record. ECF No. 91-2 at 196. In any event, IRS next stepped up its search efforts to find Nguyen another suitable position. ECF

No. 91-1 at 43; ECF No. 91-2 at 196.  To do so, Washington interviewed Nguyen to ascertain her skills and qualifications and next determined that she would be qualified for eight kinds of positions—ranging from IT Specialist to "Management & Program Analyst"—within the agency.  ECF No. 91-2 at 197; ECF No. 91-1 at 168.  IRS next searched within the agency for vacant positions that were either full or part-time on the Maryland Campus, near Fairfax, Virginia, or designated Post of Duty "anywhere."  ECF No. 91-2 at 197; ECF No. 91-1 at 168.

This initial search began on June 7, 2016, and continued for about 60 work days.  ECF No. 91-1 at 168; *see also* ECF No. 90-12 at 62:10-21, 68:16 – 70:1 (suggesting that "the search actually went on longer than the 60 work days[.]").  Specifically, Washington searched "USA Jobs" postings for the IRS that fit the established criteria.  ECF No. 91-2 at 197-202.  She also conducted internal searches for jobs coming available in the near future.  ECF No. 90-12 at 71:10 – 72:20.  Washington communicated with Nguyen during this process, at one point asking her to supply the lowest pay scale grade that Nguyen would be willing to accept.  *See id.* at 75:1 – 78:1; ECF No. 91-1 at 168.  Washington found no suitable positions.

IRS extended the search process for several more months, but it bore no fruit.  *See, e.g.*, ECF No. 91-2 at 199.  Accordingly, on March 13, 2017, Washington notified Nguyen that while the search within IRS would be discontinued, IRS requested that Treasury conduct a department-wide search that fit Nguyen's parameters.  ECF No. 91-1 at 150.

On April 11, 2017, Nguyen and Washington discussed the internal IRS search.  ECF No. 112-4 at 8-9.  Nguyen followed up with Washington, making clear that she would be "willing to accept any position with IT or non-IT and same current grade or lower grade temporally during" her recovery.  *Id.* at 22.  Nguyen requested "a copy of a list of job search results" to make sure she and Treasury were "on the same page."  *Id.*  Nguyen also notified Washington about a

7

publicly posted IT Specialist vacancy in Treasury's Office of Inspector General.  ECF No. 91-4 at 7.

Washington responded by sharing with Nguyen the job search criteria that IRS had used. ECF No. 112-4 at 9-10.  Washington also shared that a recent search result had identified an IT Specialist vacancy in the "Small Business/Self-Employed/Operations Support" business unit of IRS.  *Id.* at 9; ECF No. 91-2 at 200.  Washington asked Nguyen to indicate whether she wished to be considered for the position.  Nguyen ultimately declined because the position would have required her to work on the Maryland campus.  ECF No. 104-1 at 5-6.

Treasury next initiated the month-long, Department-wide search for Nguyen across all ten bureaus within the Department.  ECF No. 91-1 at 43; *see generally* ECF No. 112-5.  Five of the bureaus noted that a search would not be possible given Nguyen's preferred limitations.  *See generally* ECF No. 99-2.  In the end, Treasury could not identify any vacancies that matched Nguyen's requests.  *Id.*  Accordingly, on July 20, 2017, Washington informed Nguyen that no position was found and that, essentially, the reassignment search process for Nguyen was coming to an end.  ECF No. 112-4 at 4-5.  Nonetheless, Treasury continued to search USA Jobs through August 18, 2017.  *Id.* at 201-02.  By then, Treasury had run upwards of 40 searches.  *Id.* at 197-202.  No other positions were identified.  *Id.*

Nguyen, for her part, had independently searched for vacancies throughout the pendency of the interactive process.  At her deposition, Nguyen explained that she "looked through the job requirements and picked the one that best met with [her] skill set and background experience." ECF No. 91-6 at 122:9-13.  Between 2016 and 2017, Nguyen had identified seven or eight vacant positions in IRS or across Treasury.  ECF No. 99-4 at 3, 8, 13, 21, 38, 44, 52.  She attests that she forwarded them to Washington for consideration.  However, as Nguyen conceded, she

did not take into account whether the particular vacancies could accommodate her disability-related needs.  ECF No. 91-6 at 124:4 – 125:8.

### B. EEO Activity

In late August 2017, Treasury formally denied Nguyen's accommodation request, noting that Nguyen had previously rejected the "alternative accommodation offered," and Treasury had otherwise been "[u]nable to locate a position."  ECF No. 91-1 at 38; ECF No. 91-2 at 202.  Almost immediately, Nguyen contacted the agency's EEO office to initiate a formal complaint for denial of reasonable accommodation.  ECF No. 91-1 at 6-7.  On November 14, 2017, Nguyen filed her formal EEO charge, in which she alleged that the agency denied reasonable accommodation for her "debilitating anxiety and depression."  *Id.* at 1-2.  The complaint further explained that although her employer had provided an offer of accommodation, it did not adequately "remove" her "from the harmful, stressful environment that caused and exacerbates [her] condition."  *Id.*  She noted that Treasury otherwise "had overlooked reasonable accommodations that existed during their search for a reasonable accommodation."  *Id.*

### C. This Lawsuit

Having heard nothing as to her formal charge, Nguyen filed suit in this Court on February 16, 2018.  ECF No. 1.  Initially, she fronted seven separate claims related to age and race-based discrimination, hostile work environment, and retaliation.  *Id.*  On July 23, 2018, Nguyen amended the Complaint to include an additional claim for failure to accommodate her disability.  ECF No. 9 ¶¶ 206-14.  Altogether, Nguyen alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

Treasury moved to dismiss the Amended Complaint or alternatively for summary judgment to be granted in its favor. ECF No. 13. On May 28, 2019, the Court, construing the motion as one for summary judgment, found in Treasury's favor on all counts save for the failure-to-accommodate allegation brought under the Rehabilitation Act. ECF Nos. 21 & 22.

The parties next engaged in three years of protracted discovery. At its close, Treasury renewed is motion for summary judgment on the failure-to-accommodate claim. ECF No. 90. Nguyen responded to the motion, in part by attaching a list of 30 job postings that she claims she had provided to Treasury for its consideration. *See* ECF No. 99-4. Treasury separately moved to strike the list because Nguyen had failed to disclose it during discovery. ECF No. 113.

The motions for summary judgment and to strike are now fully briefed. The Court turns first to the motion to strike.

**II.     Motion to Strike**

Under Federal Rule of Civil Procedure 37(c)(1), a party that "fails to provide information or identify a witness" as required under the discovery rules will be precluded from using such evidence in a motion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court considers equitable factors such as unfair surprise, prejudice to the opposing party, the importance of the evidence, and the reasons for the late disclosure. *See S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The burden of establishing these factors lies with the non-disclosing party[.]" *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

Treasury seeks to strike Nguyen's list of approximately 30 job vacancies that supposedly were available during the protracted search for alternative placement, ECF No. 99-4, and which Treasury had requested during discovery. *See* ECF No. 112-2 at 3, 4, 6 (requesting a

"comprehensive list of all vacancy/job announcements within Treasury that [Nguyen] presented to the government from 2014 to present."). Nguyen responded during discovery with certain vacancies, but after discovery closed, substantially supplemented the production. *Id.* at 7-8, 21-22.

The Court views this dispute as much ado about nothing. As for the vacancies predating the Amended Complaint, they appear to be duplicative of those produced during discovery. *Compare* ECF No. 99-4 at 3, 8, 13, 21, 26, 32, 38, 44, 52, *with* ECF No. 112-1 at 3. Accordingly, Treasury had the information and was able to question Nguyen at her deposition at length about the suitability of these vacancies. ECF No. 91-6 at 113:10 – 122:13. The remaining vacancies (roughly 130 pages of the 193-page exhibit) postdate the filing of the Amended Complaint and do not have any clear relevance to Nguyen's claim that Treasury had failed to reasonably accommodate Nguyen's disabilities when it denied her request for accommodation in August 2017. In short, while the motion to strike will be denied, the vacancies posted after Amended Complaint are irrelevant to resolving this motion.

The Court next turns to Treasury's summary judgment motion.

### III. Motion for Summary Judgment

#### A. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a

11

genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]"  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  But "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment against that party is warranted.  *Celotex*, 477 U.S. at 322.

### B. Failure to Accommodate

The Amended Complaint alleges that Treasury failed to engage in any meaningful effort to accommodate Nguyen's disability, in violation of the Rehabilitation Act.  ECF No. 9 ¶¶ 206-14.  To establish a prima facie case for failure to accommodate, a plaintiff must show that (1) she is an individual who had a disability; (2) the employer had notice of her disability; (3) with reasonable accommodations, she could perform the essential functions of her position; and (4) the employer refused to make such accommodations.  *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 468 (4th Cir. 2016); *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015).

Treasury does not meaningfully dispute Nguyen's disability or her need for reasonable accommodation.  Rather, it maintains that no record evidence, viewed most favorably to Nguyen, supports that Treasury refused to provide reasonable accommodation.  ECF No. 90-1 at 29.  An

accommodation is reasonable if it is "feasible or plausible." *See Reyazuddin*, 789 F.3d at 414 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002)). By contrast, a proposed accommodation "is not reasonable if it either imposes undue financial and administrative burdens . . . or requires a fundamental alteration in the nature of the program." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (quoting *Sch. Bd. v. Arline*, 480 U.S. 273, 287 n.17 (1987)). Likewise, "[i]t is well settled that a reasonable accommodation does not require an employer to either (1) create a position that does not exist; or (2) bump an existing employee from a position to accommodate the disabled employee." *See Wedderburn v. Bd. of Educ. of Baltimore Cnty.*, No. 19-cv-215, 2022 WL 504511, at *9 (D. Md. Feb. 18, 2022) (citing *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 960 (4th Cir. 2021)). Nor is the employer required to accept the wish list of an employee's ideal employment alternatives. *See Reyazuddin*, 789 F.3d at 415 (citing *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996)). The employer need only provide a reasonable accommodation designed to assist the employee in performing the core functions of her job.

A corollary to provision of a reasonable accommodation is that employers must in good faith "engage with their employees in an interactive process to identify a reasonable accommodation." *Brady*, 222 F. Supp. 3d at 469 (quoting *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015)) (internal quotations and brackets omitted). The interactive process, while not "an end in itself," is designed to explore what if any accommodations can be made to "allow a disabled individual to perform the essential job functions of the position sought." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (internal citation omitted). During this process, "[r]esponsibility for identifying an accommodation . . . is shared between the employer and employee." *Fleetwood v. Harford Sys.*

13

*Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005) (citing *May v. Roadway Express, Inc.*, 221 F. Supp. 2d 623, 627-28 (D. Md. 2002)). If in the end, "no reasonable accommodation was possible," then there is "no further interactive process necessary." *Wilson*, 717 F.3d at 347 (quoting *Dargis v. Sheahan*, 526 F.3d 981, 988 (7th Cir. 2008)).

Treasury specifically argues that the record amply reflects its good faith, extensive efforts to accommodate Nguyen's anxiety and depressive disorders. ECF No. 90-1 at 29-31. Accordingly, says Treasury, no record evidence supports that it *refused* to provide Nguyen reasonable accommodation. The Court agrees.

The record, viewed most favorably to Nguyen, shows that Treasury engaged in the interactive process and quickly found a position that responded to Nguyen's disability-related needs. Specifically, in November 2015, Treasury offered to transfer Nguyen to a new IT Specialist position where she would be working on a different project in a "new Branch (Division)" on a part-time schedule, with proper training and eventual telework. ECF No. 91-1 at 34. Nguyen rejected that offer.

Treasury continued to search for another suitable alternative. *See generally* ECF No. 91-2 at 196-202. It next offered Nguyen a vacant position in a completely different role, which Nguyen likewise rejected. *Id.* at 200-01. So Treasury continued the hunt and, as Nguyen's medical needs changed, Treasury responded to fit Nguyen's changing needs. *See id.* at 199-201. After covering the waterfront in search of an alternative position and coming up empty, Treasury denied her request for reassignment as a reasonable accommodation. When viewing this record most favorably to Nguyen, no rational factfinder could conclude that Treasury refused to provide Nguyen a reasonable accommodation. Thus, summary judgment in favor of Treasury is warranted.

Nguyen, in response, offers a tangle of supposed material disputed facts, none of which defeat summary judgment. First, Nguyen contends the initial alternative assignment was not "reasonable" because Gilpin would have remained her *third level* supervisor. ECF No. 104-1 at 5. Thus, says Nguyen, a reasonable factfinder could conclude that this offer amounted to an unreasonable accommodation. But nothing in the record supports that Nguyen could not perform her essential job functions with Gilpin as part of the supervisory chain. Indeed, as Nguyen concedes, she had no prior on-the-job interactions with Gilpin. ECF No. 91-6 at 48:18 – 51:5. Nor did Nguyen's treating physicians ever identify anything about Gilpin as exacerbating Nguyen's condition. ECF No. 91-1 at 32-33, 108. From this, no juror could conclude that this position was not a reasonable accommodation.

Evidently recognizing the fallacy of this argument, Nguyen presses that offering her a position with Gilpin in the chain-of-command violated her "agreement" with IRS. ECF No. 104-1 at 5, 9. As an initial matter, no evidence supports that Nguyen and IRS reached any such agreement. *See* ECF No. 91-2 at 193; ECF No. 91-1 at 148-49. But even if they had, that alone does not render this demand a necessary precondition to providing a reasonable accommodation. *See* ECF No. 91-1 at 204-05. Agreement or no, Nguyen can point to no record evidence that supports how reassignment to a new position that included Gilpin as third level supervisor amounts to a denial of reasonable accommodation.

Moreover, even if somehow that first offer did not constitute a reasonable accommodation, Treasury did not "stop" the search for a suitable transfer. ECF No. 91-1 at 168; *see also* ECF No. 90-12 at 62:10-21, 68:16 – 70:1. In fact, Treasury searched for positions within IRS on an almost weekly basis from June 7, 2016, to August 18, 2017. ECF No. 91-2 at 197-202. Accordingly, when considering the entirety of the record, Treasury cannot be said to

have refused to accommodate Nguyen simply because Nguyen did not accept the initial offer of reassignment.

Nguyen next seems to suggest that Treasury did not engage in the interactive process in good faith. ECF No. 104-1 at 9, 11. She maintains that Treasury "artificially limited" the job search criteria to exclude Nguyen's skills and experience so that it would be sure not to generate a placement for her. *Id.* at 6, 9. In support of her position, Nguyen points to a single exhibit—the "Job Search Data Sheet for IRS Reassignment Requests"—that covered the search period between June and August of 2016. ECF No. 99-3. She claims this document shows that Treasury purposely omitted information with the goal of generating no viable positions for Nguyen. When viewing the entire record most favorably to Nguyen, no evidence supports Nguyen's purposeful omission theory.

Although it is undisputed that Treasury used this Data Sheet as part of its search efforts, no reasonable reading suggests that the information included within it would have excluded otherwise suitable vacancies in the search process. The document summarizes Nguyen's "Job Experience" as an IT Specialist, to include such "major duties" as developing Common Business Orientated Language software. *Id.* at 2. The sheet also lists eight positions for which Nguyen appeared qualified, as well as a summary of Nguyen's "Job Search Parameters." ECF No. 99-3 at 2-3. Notably, Nguyen collaborated with Washington to create these criteria, and Washington had double checked with Nguyen that the criteria were correct before beginning the search process. ECF No. 91-1 at 168; ECF No. 91-2 at 197. Washington also updated it in April of 2017 to reflect Nguyen's changing preferences. ECF No. 112-4 at 8-9. Thus, neither this Data Sheet nor the record as a whole could support Nguyen's view that Treasury somehow rigged the reassignment process to deprive her of a reasonable accommodation.

Nguyen also maintains that Treasury did not consider the vacancies that she found and submitted for consideration as potential reassignments. ECF No. 104-1 at 10. To be sure, the record reflects Nguyen had notified Treasury of several potential vacancies over the course of the interactive process. ECF No. 91-4 at 7; ECF No. 99-4 at 2-62. However, no evidence supports that Nguyen was qualified for any of these positions or that they were capable of accommodating Nguyen's limitations. One such vacancy for the position of IT Specialist in the "Financial Crimes Enforcement Network" required a "Special Sensitive" security clearance, which Nguyen did not possess. *Compare* ECF No. 99-4 at 34, *with* ECF No. 91-6 at 116:17-25. Another required "occasional travel," which Nguyen admittedly could not manage given her medical condition. *Compare* ECF No. 99-4 at 54, *with* ECF No. 91-6 at 118:8 – 119:3. The record is silent on whether she would be qualified or capable of filling the other vacancies that she submitted for consideration. Without more, the Court cannot conclude that Nguyen's submission of some vacant jobs of unknown suitability alone supports that Treasury refused to provide her reasonable accommodation.

Last, Nguyen complains that Treasury "stopped its search and did not engage in the interactive process" when it denied her accommodation request in August 2017. ECF No. 104-1 at 2. This argument amounts to a challenge of the search process itself, for which no cause of action shall lie. *See, e.g.*, *Dressel v. Safeway, Inc.*, No. ELH-19-1556, 2020 WL 5880860, at *7 (D. Md. Oct. 2, 2020) (citing *Wilson*, 717 F.3d at 347). Under Nguyen's logic, any time an agency ends a fruitless course of action, the cessation itself amounts to a cause of action.[6]

---

[6] For reasons not altogether clear to the Court, the parties spill much ink about their continued attempts to secure Nguyen suitable placement well after the filing of this lawsuit. *Compare* ECF No. 104-1 at 7 (describing vacancies as recent as 2022), *with* ECF Nos. 112 at 16 & 90-1 at 20-22 (describing the position Treasury identified in 2020). Because these efforts postdate the filing of this suit and Nguyen never amended her claims to include these post-suit efforts, they are outside the scope of this litigation. *Cf. Reyazuddin v. Montgomery Cnty, Md.*, No. DKC 11-0951, 2012 WL 5193837, at *2-5 (D. Md. Oct. 18, 2012) (granting plaintiff's motion to add new disability discrimination claim predicated on events taking place more than one year after she commenced the action).

Nor does the record support the more legally tenable argument that Treasury's August 2017 denial of Nguyen's accommodation request amounts to a refusal to accommodate her in violation of the Rehabilitation Act. After roughly two years of working with Nguyen to find a suitable alternative position, Treasury communicated to Nguyen that it must deny her original request for accommodation because none could be found. ECF No. 91-1 at 38. Because no other evidence suggests that, as of August 2017, Treasury had other possible avenues of accommodation that it ignored or refused to employ, no record evidence supports that its decision to cease this process constitutes a refusal to accommodate Nguyen's disability. Thus, on this record, no rational trier of fact could conclude that Nguyen had been denied a reasonable accommodation.

## IV. Conclusion

For the foregoing reasons, the Court denies Treasury's motion to strike and GRANTS Treasury's motion for summary judgment. A separate Order follows.

February 1, 2023  
Date

/s/  
Paula Xinis  
United States District Judge